Vivian L. CARMAN, Oklahoma State Highway Department, and Firemen's Fund Insurance Company, Petitioners,

v.

The Honorable Lavern FISHEL, Judge of the District Court of The Twenty-fifth Judicial District, Oklahoma, Respondent.

No. 41704.

Supreme Court of Oklahoma.

July 5, 1966.

Rehearing Denied Oct. 4, 1966.

Gordon & Belote, McAlester, for petitioner Vivian L. Carman.

Arnote, Bratton & Allford, McAlester, for petitioners Oklahoma State Highway Department, Firemen's Fund Ins. Co.

R. Kay Matthews, Atoka, James E. Driscoll, Seminole, for respondent.

George B. Fraser, Jr., Norman, Watts, Looney, Nichols & Johnson, by Clyde J. Watts, Oklahoma City, amici curiae.

LAVENDER, Justice:

This is an original action for a writ of prohibition filed in this court in connection with a pending suit in the District Court of Atoka County. In the District Court the petitioners were sued by one Sally Walford for alleged damages for personal injuries arising out of an automobile accident. The accident involved occurred on February 22, 1965, and the suit was filed April 13, 1965. The case below proceeded through the pleading stage, and on May 26, 1965, plaintiff propounded of the defendants certain interrogatories asking, among other things, whether or not the defendants had taken the written statements of any witnesses to the accident, and, if so, defendants were requested to furnish the names and addresses of such witnesses, if any. The defendants were also asked concerning whether or not any photographs had been taken of the scene or of the vehicles, and whether or not at the time of the accident the individual defendant Vivian L. Carman had in force and effect a policy of liability insurance which would be available for the

satisfaction of any judgment the plaintiff might be awarded.

The defendants agreed to furnish the photographs for copying by the plaintiff, and no issue is here presented regarding whether defendants could have been compelled to do so.

The interrogatories concerning statements of witnesses were answered by the defendants, and the names and addresses of such persons were supplied plaintiff. The defendants objected and refused to answer those interrogatories concerning insurance.

The questions thus presented are:

(a) Under Rule 15 adopted by the Supreme Court of Oklahoma March 15, 1965, entitled Rules for the District, Superior and Common Pleas Courts of Oklahoma, Chapter 2 Appx. to 12 O.S.Supp.1965 (which was substantially enacted into law by the 1965 Legislature and now is 12 O.S. Supp.1965, Sec. 549, providing for interrogatories,) is the plaintiff in a personal injury action involving an auto collision entitled to compel the defendant in such action to answer interrogatories concerning whether such defendant at the time of the accident had in effect a policy of liability insurance which would be available for the payment of plaintiff's damages, and if so to divulge all the terms of such policy, including the limits thereof?

(b) Is the plaintiff in such an action as above described entitled to an order under 12 O.S.Supp.1965, Sec. 548, to compel the defendant to produce such policy of insurance for copying by the plaintiff?

(c) Is the plaintiff in such an action entitled to an order under the last cited statute directed to the defendants to compel them to produce for inspection and copying by the plaintiff all witnesses' statements in the possession of the defendants, including the statement of the plaintiff herself?

Following the defendants' refusal to answer the questions concerning insurance, the plaintiff filed a motion to compel the defendant to answer the interrogatories, which motion was sustained by the trial court. Also upon the refusal of the defendant to produce the insurance policy and the statements of the witnesses, the plaintiff filed a motion to compel such production, and the trial court so ordered. Upon the defendants refusal to comply with the above mentioned orders of the trial court, said defendants brought this action in this court for a writ of prohibition to restrain and enjoin the lower court from enforcing its said orders by contempt proceedings against the defendants.

The scope of this opinion, therefore, will be to state as clearly as possible this court's interpretation of the new "discovery" rule of this Court (Rule 15) and the statutes enacted by the 1965 Legislature, namely, 12 O.S.Supp.1965, Secs. 548 and 549, within the issues presented by questions (a), (b) and (c) above.

12 O.S.Supp.1965, Sec. 548 provides as follows:

"Upon motion of any party showing good cause and upon notice to all other parties, and subject to the equitable power of the court to protect any party or witness from annoyance, embarrassment, or oppression, the Court in which an action is pending may (1) order any such party to produce and permit the inspection and copying or photographing, by or on behalf of the moving party, of any designated documents, papers, books, accounts, letters, photographs, objects, or tangible things, not privileged, which constitute or contain evidence relating to any of the matters within the scope of examination permitted by deposition and which are in such parties' possession, custody or control, or (2) order any party to permit entry upon designated land or other property in his possession or control for the purpose of inspecting, measuring, surveying, or photographing the property or any designated object or operation thereon within the scope of which examination is now permitted by deposition. This order shall specify the time, place, and manner of making the

inspection and taking the copies and photographs and may prescribe such terms and conditions as are just."

This section is almost an exact adoption of Rule 34 of the Federal Rules of Civil Procedure, which has also been adopted substantially in a number of states.

Because the statute requires the filing of a motion showing "good cause" before the trial court may order the production of the matters sought by discovery, we believe it helpful to set forth herein the motion filed in the court below and of the affidavit in support thereof which, we are urged, reflects the "good cause" showing required to be made.

"MOTION FOR PRODUCTION OF DOCUMENTS AND THINGS UNDER 12 O.S.Supp.1965, 548 and 12 O.S.A. 482

"Plaintiff moves the Court for an order requiring the defendants, and each of them to produce and to permit the plaintiff to inspect and to copy each of the following documents, memorandums, or statements.

"1. Copies of statement taken from plaintiff and any witness to this accident all as disclosed in plaintiff's interrogatory No. 1, said statements admitted to be in existence but objection interposed thereto.

"2. Copies of public liability insurance policy issued to assured Vivian L. Carman, same being reflected in plaintiff's interrogatories 15, 16, 17 and admitted to be in existence by defendant Carman's Answer and objection there interposed.

"3. All photographs in the defendant's possession taken of all vehicles involved, together with photographs of the scene of the accident.

"Plaintiff further informs defendant, through its attorneys, that if this demand is not complied with within ten days after the receipt of said demand, plaintiff will, under the terms of the above cited section of the Statute, apply to the Court for an order allowing plaintiff the inspection of such X-rays, records and documents."

"STATE OF OKLAHOMA ⎱
"COUNTY OF SEMINOLE ⎰ AFFIDAVIT

James E. Driscoll, one of the attorneys for plaintiff, being first duly sworn, deposes and says:

"1. He is informed and alleges on information and belief that the defendants, and each of them, have in their possession, custody or control of each of the documents, pictures, and objects described in the above and foregoing motion for production.

"2. Each of said documents or objects constitutes or contains evidence relevant and material to matters involved in this action, since each of them will tend to substantiate material averments contained in the petition.

"3. The information contained in or revealed by each of the documents and things requested in the plaintiff's motion for production is within the control of the defendants, and each of them, and is unavailable to the plaintiff other than through the vehicle of this discovery proceeding.

"4. Since all of this important and vital information is completely within the control of the defendants, and each of them, and the plaintiff has no other means of obtaining this information, the plaintiff cannot adequately prepare for trial unless this motion is granted.

"5. That the statements taken by defendants, and each of them, of all witnesses and parties litigant are of vital importance relative to plaintiff's right of impeachment."

The petitioners urge, as grounds for the issuance of a writ of prohibition in this matter, the following propositions which will be hereinafter considered in the order as follows:

"Proposition No. I: The Supreme Court will issue its Writ of Prohibition to prevent the District Court from acting without, or in excess of, its jurisdiction,

particularly when there is no plain, speedy and adequate remedy at law.

"Proposition No. II: Privileged matters are always exempted by statute and this exemption by decision relates to work-products of an attorney in the majority of cases.

"Proposition No. III: A showing of good cause is a prerequisite to the right of discovery under Section 548 of Title 12 of the Oklahoma Statutes.

"Proposition No. III-A: Good cause is ordinarily not shown where the moving party has not shown a bona fide attempt to obtain the information by independent investigation.

"Proposition No. IV: Facts must be shown by affidavit or otherwise that the items sought by discovery are relevant to the issues in the case.

"Proposition No. IV-A: Facts must be shown by affidavit or otherwise that the insurance policy sought by discovery is relevant to the issues in the case."

■■■■ Petitioners' first proposition that this court will in a case of this nature issue its writ of prohibition to prevent action of the trial court granting discovery has not been heretofore considered by this court. It is apparent, however, that an order under the discovery statute is not an appealable order. Watts v. Superior Court, 87 Ariz. 1, 347 P.2d 565. See also Dean v. Superior Court, 84 Ariz. 104, 324 P.2d 764, 73 A.L.R.2d 1. It is also true that the remedy of appeal from the final judgment might not constitute an adequate and effective remedy in the event one party to a lawsuit is wrongfully compelled to produce from his file certain material for inspection by his adversary, see McCoy v. District Court (1952) 126 Colo. 32, 246 P.2d 619. However, we are also mindful of the fact that the statute on discovery necessarily invests the trial court with a wide discretion in determining when and to what extent such act shall be applicable in a particular proceeding. If the trial court were not clothed with discretion in such matters,

the obvious purpose of the statute to afford to litigants more precise and certain justice would be defeated. We are therefore in this cause, and will be in future cases, reluctant to interfere in the action of the trial courts and will not do so except in those instances when it may be shown that the trial court clearly exceeded its authority. In the particular case, however, we have determined to take jurisdiction, not necessarily because of any showing that the trial court exceeded its discretion in this cause, but because of the fact the discovery statute and Rules of this Court have only recently been enacted and adopted, and an opinion of this court would hopefully be of help to both the bench and bar in the future handling of such cases at the trial court level.

■■ Petitioners in their second proposition call to our attention the fact that the statute excludes from its application any material which is "privileged," and petitioners assert the statements of witnesses are privileged herein because they are the "work product" of petitioners' attorneys. In support of this petitioners cite, among other cases, the cases of Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451; and Alltmont v. United States, 177 F.2d 971, cert. den. 339 U.S. 967, 70 S.Ct. 999, 94 L. Ed. 1375. Nearly all of the cases cited by the plaintiff involve the application of federal Rule 34, which is nearly identical to our 12 O.S.Supp.1965, Sec. 548, supra. In the Hickman case, the attorney for one of the parties had taken written statements from witnesses in anticipation of litigation. The statements in the Hickman case, as in this case, were of third parties, not of the clients themselves. The Supreme Court of the United States in Hickman said that statements of third parties would not be prohibited from discovery as being within the attorney-client privilege. The Supreme Court said, however, that as a matter of public policy the courts should not compel production of written statements of witnesses taken by an attorney for one of the parties, and therefore constituting the

"work product" of that lawyer, absent a showing of necessity therefor or that a denial of production would cause hardship or injustice. The opinion of the U. S. Supreme Court was however that upon a sufficient showing of necessity even such statements as these might be subject to discovery. Whether the statements of witnesses sought in this cause were the "work product" of the attorneys for petitioners such as to require the respondent to make a showing of necessity or that a denial of production would result in injustice, however, is not before us. We are unable to find any reference in the facts which would show that the petitioners' attorneys personally took the statements.

We do not agree with the interpretation of the Hickman case stated in Alltmont v. United States, a circuit court of appeals decision, supra, wherein it is said " * * * the rationale of the opinion of the Supreme Court in the Hickman case requires that the same showing of good cause for the production of such statements of witnesses should be made by the adverse party seeking copies of them" regardless of whether the statements were obtained by counsel in preparation for trial or by the client. To our minds there is a logical and definite distinction between requiring production of statements taken by a client or an insurance adjustor, which statements later find their way into the attorney's file, and statements taken by the attorney himself in preparation for trial. It should be noticed that the "difference" in allowing discovery of witnesses' statements obtained by an attorney or by a layman is limited to the difference in the "showing of cause" required to be made by the one requesting the material before it will be ordered produced.

In order to protect the adversary system and to insure its continuation, the U. S. Supreme Court stated that only in those cases of necessity, where a denial of discovery would result in injustice, should one attorney be permitted access to his adversary's work product and that the burden should be upon the one seeking discovery to show such facts as will support a claim of necessity. See the specially concurring views of Justice Jackson in Hickman wherein the learned justice stated with clarity one of the reasons for the exercise of restraint in opening the files of one attorney to his opponent, absent a good reason therefor, when he said that while it may be true the rules permitting pre-trial discovery were designed to "do away with the old situation where a lawsuit developed into 'a battle of wits between counsel,' * * * a common law trial is and always should be an adversary proceeding. Discovery was hardly intended to enable a learned profession to perform its functions either without wits or on wits borrowed from the adversary."

The rule should be, we think, quite different concerning statements procured by persons other than the attornyes for the parties. If one seeking the invocation of the discovery statute in a particular case was required to comply with the requirements of Hickman and to make a showing of "special circumstances" which would make it essential to the preparation of his case that he have copies of the statements, (including all statements whether procured by the attorney or someone else) then to our minds the purpose of the discovery statute would be to a large extent, and in practically all cases, nullified.

We are therefore of the opinion that the witnesses' statements in this matter are not privileged from discovery as the work product of the petitioners' attorneys within the rule of the Hickman case and are therefore subject to discovery upon an ordinary showing of good cause as required by the statute.

■ What constitutes "good cause" authorizing trial court to require production of statement of witnesses necessarily depends to a considerable degree upon the particular circumstances of each case and upon consideration of practical convenience, and it is for this reason that other decisions dealing with the problem of "good cause"

**970**

under the rule can only be of limited assistance. Watts v. Supreme Court, supra.

We may start the discussion by again referring to the Hickman case as cited in Martin v. Capital Transit Co., 83 App.D.C. 239, 170 F.2d 811 (1948), wherein the court held:

> "The position of the appellant appears to be that upon filing his motion he was entitled as a matter of right to an order for the production of the report. * * * for lack of a showing of good cause for the production of the Davis report the order of the District Court denying the motion was proper. * * * The rule contemplates an exercise of judgment by the court, not a mere automatic granting of a motion. * * *"

Moore, in his work on Federal Practice, 2nd Ed., Vol. 4, Sec. 26.23(8.–2) page 1411, says:

> "* * * at least until the rules are further amended or the subject clarified by another Supreme Court decision, most courts will probably continue to require some sort of a showing before ordering production of statements of witnesses, even though not garnered by an attorney. * * *"

For other cases holding a showing of "good cause" must be made and the movant is not entitled to discovery as a "matter of right" simply upon filing his motion therefor, see Safeway Stores, Inc. v. Reynolds, (1949) 85 U.S.App.D.C. 194, 176 F.2d 476, and Hauger v. Chicago, R. I. & P. R. Co., (7 Cir. 1954) 216 F.2d 501.

The cases cited by the respondent in opposition to petitioners urging that "good cause" must be shown (and was not shown here) are all cases where some unusual circumstance was recited, such as, for example, in the case of Johnson v. Ford, 35 F.R.D. 347 (1964) the facts were that the statements were of "key witnesses" and made shortly after the occurrence. Goosman v. A. Duie Pyle, Inc., 320 F.2d 45 (4 Cir. 1963) says if statements were taken at the time of the accident *and* party seeking production was himself prevented from making his own investigation at that time, such was held to be a sufficient showing of good cause.

■ Regarding the plaintiff's own statement which respondent says was taken by an insurance investigator long before the suit was filed, we are driven to the conclusion that here there must also be made some showing of good cause before the trial court is authorized to exercise its judgment and compel production. The statute on discovery in Arizona is very similar to our own. In the case of Watts v. Superior Court, supra, the plaintiff movant was held to have shown "good cause" for the production of plaintiff's own statement where the facts were that approximately twelve days after the accident, while plaintiff was still a patient in the hospital as a result of her injuries, a claims investigator took her statement. The plaintiff was not then represented by counsel, and suit was not filed until two months afterwards. The Supreme Court of Arizona said "* * * (while) * * * the modern trend has been to greatly liberalize the Rules pertaining to discovery and this is particularly true on the question of the right of a party to the discovery of a statement given by himself to an adverse party, 27 C.J.S. Discovery § 71(8); * * * however, such * * * trend does not mean that a showing of 'good cause' is no longer necessary or that such a motion to produce a party's own statement should be automatically (sustained) * * *." Martin v. Capital Transit Co., supra.

The more recent cases require even less of a showing of "good cause" where a party is seeking discovery of his own statement. Moore's Federal Practice, 2nd Ed., Vol. 4, page 2454. See also McCoy v. Dist. Court of Larimer Co., 126 Colo. 32, 246 P.2d 619, and cases therein cited.

■ In the affidavit filed by respondent in this action no facts whatever surrounding the taking of the plaintiff's own statement are shown. In view of this failure, we must conclude that plaintiff has not

established good cause for the production of plaintiff's own statement.

The question of what facts constitute a sufficient "showing of cause" has caused considerable difficulty. To attempt to say that certain facts, if established, will satisfy the "good cause" requirements of the statute and anything less will not is to unduly restrict the operation of such statute. Each case must be determined by its own circumstances within, of course, certain general limitations.

What appears to be the majority view is represented by a line of cases holding a positive showing of good cause is required. Some of these courts take the position that if the witnesses are available to the party and can be interrogated by him there will ordinarily be no occasion for ordering production of their statements. Moore's Federal Practice, 2nd Ed., Vol. 4, page 1413. A "specific showing" of good cause will be required. Guilford National Bank of Greensboro v. Southern Ry. Co. (4th Cir. 1962) 297 F.2d 921; Hauger v. Chicago, R. I. & P. R. Co., supra (7th Cir., 1954). In Guilford, plaintiff who began taking statements of witnesses six days after the accident was held not entitled to copy of witnesses' statements taken day after the accident.

In Alltmont v. United States, supra, the court said that because the respondent had, in answer to interrogatories, given the movants the names and addresses of the persons whose statements were taken, and because there was nothing to indicate that movants would be unable to interview the witnesses themselves without any undue burden or delay, that movants under such circumstances, very possibly, would be unable to show the "special circumstances" that would justify an order to compel production of the witnesses' statements in that case. This same view is followed by what appears to be the clear majority of cases, including Hauger v. Chicago R. I. & P. R. Co., supra. In Hauger the movant sought witnesses' statements alleging they were needed for impeachment purposes. The court said that

this alone is not a sufficient showing of cause because it did not appear that the testimony given by the witness in his deposition was inconsistent with his statement. See also Hudalla v. Chicago, M. & S. P. R. R. Co., D.C., 10 F.R.D. 363.

It would appear that the term "special circumstances" as used in the above cases means such circumstances as would distinguish the case in which discovery is being sought from any other case where it, of course, would be helpful to one party to have the benefit of the other party's industry in making a full investigation of the facts in the case. In commenting upon the necessity of "special circumstances" or, in other words, the showing of "good cause" which must be made before the trial court is authorized to order production, the court in the Hudalla case said " * * * the sheer conclusion stated in the affidavit of counsel in support of the motion (to compel production) and the absence of any showing of special or exceptional circumstances which should move the Court to exercise his judgment require a denial thereof." The court pointed out also that the fact that the statement sought might be helpful in cross-examination or by way of impeachment was not controlling. See also Safeway Stores, Inc. v. Reynolds, supra.

■■ Hence a showing will usually be required that the witnesses are no longer available or can be reached only with difficulty or, although still available, are hostile and refuse to furnish information. A recitation of facts showing that movant diligently tried to obtain the information but failed has also been required. See Lauritzen v. Atlantic Greyhound Corp. (6th Cir., 1950) 182 F.2d 540. Under the doctrine of most cases, Rule 34 requires a distinct factual showing of good cause, mere general affirmations by affidavit or otherwise being insufficient. The movant must set forth facts showing the presence of good cause. Goldner v. Chicago & N. W. Ry. System (N.D. Ill, 1952) 13 F.R.D. 326. See cases collected at 73 A.L.R.2d 110–119. The burden of showing that the witnesses

are not available is on the moving party. Dean v. Superior Court of Arizona, supra; Greenberg v. Barzel Associates, Inc., (City Ct. 1959) 187 N.Y.S.2d 451.

■ Where party applying for the production, inspection and copying of witnesses' statements obtained by his adversary makes no showing that the witnesses are no longer available, or cannot be located, or are hostile and will not furnish information, or that the information desired cannot be obtained elsewhere upon diligent effort, there is no showing of "good cause" sufficient to justify an order of production. Dean v. Superior Court, Ariz., supra. At least one possible exception to the above may exist such as where statements of witnesses were taken immediately after an accident and movant was prevented from taking such statements then or for a considerable time thereafter. Some courts have treated such last described statements as having a "unique value" because they were taken while the witness's memory was vivid and recent, whereas the same person several months later perhaps might have a much less effective recall of the events.

■ In support of this line of reasoning see Jones v. Westinghouse Electric Supply Co. (1957), 11 Terry 274, 50 Del. 274, 128 A. 2d 808. Under the trend to liberalize discovery, probably the above would, under circumstances reflecting a long enough period of time so as to support the inference that time had had its effect on the memory of the witness, be a sufficient showing of cause when coupled with a showing of movant's inability to get the statements himself prior to the lapse of time. In our case, however, no such showing is made. The affidavit filed herein by plaintiff in support of her motion for production consists to a large degree of conclusions as opposed to statements of fact; for example: " * * * the information * * * is unavailable to the plaintiff other than through discovery * * *." Immediately the question arises as to why the information is unavailable to plaintiff except through discovery. If this statement would be held to constitute a "showing of good cause" as required by the statute, then truly the plaintiff as a matter of right simply upon filing her motion would be entitled to an order compelling production of the material. Such was not the intent of our discovery statute. No case has been called to our attention, nor have we been able by our separate research to find any authority, federal or state, which would support such theory. This affidavit simply failed to allege sufficient facts upon which the trial court could exercise its discretion and judgment. Rule 34 (federal rule similar to our statute Sec. 548) authorizes the district court to compel production of documents, papers, etc. upon motion of a party "showing good cause," not upon a mere allegation or recitation that good cause exists. The rule contemplates an exercise of judgment by the court, not a mere automatic granting of a motion. Martin v. Capital Transit Co., supra.

■ The respondent urges that the defendants (petitioners here) must show they would be prejudiced by producing statements before the production of them will not be ordered. No case is cited, nor do we know of any, placing such a burden upon the party in possession of witnesses' statements. The statute places the burden upon the moving party to make a showing of good cause. The case of Crowe v. Chesapeake & Iowa Railroad Company, D.C., 29 F.R.D. 148, is not in point with the facts here.

■ Our attention is directed by brief filed at the court's request by amicus curiae to the existence of certain statutes which, we are urged, provide authority in the trial court independently of the new discovery statute to compel the production of the witnesses' statements without requiring that good cause be first shown. Particularly we are to notice 12 O.S.1961, Secs. 387 and 482. Sec. 387 concerns material to be produced in response to subpoena duces tecum and Sec. 482 material which may be inspected. In both instances such material by the terms of the statute is described as documents which are, or may be, evidence.

These statutes do not authorize a trial court to compel one party to display to his adversary all witnesses' statements in his possession without regard to whether such statements may or may not be used as evidence, which was done in this case. We do not find such statutes have the effect as urged. We are of the opinion, as has been heretofore stated, that 12 O.S.Supp.1965, Sec. 548 is the only statute by which a trial court may compel one party to produce for inspection and copying by his adversary statements of witnesses, and that before such order may be issued a showing of good cause as required by the plain wording of that statute must be made.

 We are, for the above reasons, of the opinion that the September 15, 1965 order of the trial court wherein the same directs the defendants to produce for copying by the plaintiff the statement taken from the plaintiff and of any witnesses to the accident is invalid, and the enforcement thereof should be by this court prohibited.

We will now determine whether the said order of the trial court was valid wherein the defendant Vivian L. Carman is ordered pursuant to Rule 15 of the Rules for the District, Superior and Common Pleas Courts of Oklahoma, Chapter 2, Appendix to 12 O.S.Supp.1965 and which is now 12 O.S.Supp.1965, Sec. 549, to answer interrogatories relating to a policy of liability insurance which was in force and effect on her vehicle at the time of the accident, and whether she should be compelled to produce such policy for inspection and copying by the plaintiff pursuant to 12 O.S.Supp.1965, Sec. 548.

The petitioner asserts that the insurance policy is not relevant to the issues in the case; that no judgment has yet been rendered against the defendant Carman and that none may ever be rendered. Petitioners state further that the terms of the insurance policy and the document itself are not properly subject to discovery by interrogatories, or by virtue of our new discovery statute, because such material relates to none of the issues which will be determined in this cause and could not possibly furnish leads to any other evidence which would be admissible, and that these are the true limitations of the scope of discovery before trial. Plaintiff on the other hand argues that the information is subject to discovery because it would, or might, facilitate settlement of the case, and that this is a desirable method of disposing of litigation, favored by the law; that the speedy disposition of lawsuits is one of the purposes of discovery rules and statutes.

Plaintiff also asserts the proposition: "Since judicial notice is taken of Oklahoma Motor Vehicle Safety Responsibility Act, 47 O.S.A. 50—542, good cause is shown that interrogatory be answered and policy produced in public interest." It is, of course, a fact that if such policy of liability insurance is relevant and subject to discovery, the interrogatories should be answered and the policy should be furnished for copying by the adversary. It is equally obvious that in connection with this material no showing of "good cause," as is required to compel the production of witnesses' statements, would be necessary. Our inquiry therefore is directed solely to the relevancy of the insurance to this cause and therefore its availability by discovery.

 At the outset it appears that a policy of liability insurance might be relevant in one case and not necessarily in the other. For example, where the ownership of an automobile was involved in the case of Layton v. Cregan & Mallory Co., 263 Mich. 30, 248 N.W. 539, the trial court ordered the production of the insurance policy to afford some evidence of ownership. Many other similar factual circumstances could easily arise where the production of an auto liability policy could be compelled. In those cases, however, the problem is considerably less difficult than the one before us, for in those cases the policy would not only be "relevant" to the issues in the cases but would constitute "admissible" evidence concerning those issues. The question comes to mind: Does the material, in order to be "relevant" and subject to dis-

covery, have to be "admissible" as evidence? We think not. The scope of inquiry permitted by discovery depositions in Oklahoma was established by State ex rel. Westerheide v. Shilling, 190 Okl. 305, 123 P.2d 674, wherein it was said:

"A party may not refuse to testify by deposition * * * (3) because the party taking the deposition desires to use it in preparing his pleadings or in preparing for trial, * * *."

We also notice that the scope of permissible inquiry by interrogatories is related to the range of inquiry permitted by deposition. Therefore it would appear that the previous expressions of this court in the cases cited by petitioners to the effect that because the fact the defendant had insurance covering her in the operation of her auto at the time of the accident is not admissible as evidence in the trial, the same would not be subject to inquiry by interrogatories, are not controlling nor applicable. Yet while such material need not itself be "admissible" in evidence, does not the rule of Shilling require that the material, to be "relevant" and subject to inquiry, lead to the discovery of admissible, relevant evidence? See in this connection Moore's Federal Practice, supra, Sec. 34.11 at page 2465, wherein the author discussing the necessity of "relevancy" in discovery said:

"It is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence."

The question therefore resolves itself as follows: Is an automobile liability insurance policy subject to discovery, although the same is clearly not admissible in evidence, and although admittedly it does not lead to other evidence which would be admissible, on the grounds that it might facilitate the settlement of the cause? The attorney for the respondent, who represented the plaintiff below, quite frankly admitted in argument before this court that his purpose in seeking the insurance information was to better enable him to settle his case. What concerns this court is that to have such information available to plaintiff would not necessarily facilitate settlement of the cause, but on the contrary conceivably could unduly prolong it. We have in mind the natural, human temptation that would confront the plaintiff if she knew, for example, that the policy limits were $100,000.00, to "evaluate" her claim for personal injuries for settlement discussions based on this amount, rather than upon a reasonable and careful analysis of her actual damages and compensable loss. Would the knowledge of how much money is available to pay plaintiff cause a departure from the real purpose of the suit, i. e. to fully and adequately compensate the plaintiff her damages?

We are well aware of the theory advanced by Maddox v. Grauman, Ky. (1954), 265 S.W.2d 939, 41 A.L.R.2d 964, cited by the respondent, to the effect that "if the policy of insurance is relevant after judgment, why not before?" and the theory, also in that case, that "the policy of insurance is for the benefit of the injured party and properly subject to discovery." We are urged to adopt the reasoning of Ash v. Farwell, 37 F.R.D. 553, (Dist.Ct., Kan., 1965) wherein the court indicated that the "purpose of the discovery statute is to relieve congested court calendars and any matters which would lead to an early settlement of controversies would be properly subject to discovery." These views seem to adopt the belief that the litigant exists for the benefit of the court and the law, rather than vice versa, and that almost any information could be forced out of either side to a lawsuit if it would somehow contribute to the clearing of the court's calendar. We cannot ascribe to this view.

We are of the opinion that if we should, in an ordinary action for negligence arising out of the operation of an automobile such as we have in this case, adopt the view that a policy of automobile liability insurance is subject to discovery under our present rules and statutes we would be permitting " * * * something which

never was intended (by the discovery statutes) or is not within the declared objects for which they were adopted." Jeppesen v. Swanson, (1955) 243 Minn. 547, 68 N. W.2d 649. The following quote from Jeppesen seems particularly appropriate to our problem:

"* * * even though the discovery is not to be limited to facts which may be admissible as evidence, the ultimate goal is to ascertain facts or information which may be used for proof or defense of an action. * * * Where it is sought to discover information which can have no possible bearing on the determination of the action on its merits, it can hardly be within the rule. It is not intended to supply information for the personal use of a litigant that has no connection with the determination of the issues involved in the action on their merits."

Further quoting from the same opinion:

"* * * information should (not) be discoverable which is desired only for the purpose of placing one party in a more strategic position than he otherwise would be by acquiring information that has nothing to do with the merits of the action. There must be some connection between the information sought and the action itself before it becomes discoverable."

See also Peters v. Webb, Okl., 316 P.2d 170, which holds that a petition filed against a doctor and his insurer for the sole purpose of securing answers to various interrogatories by the doctor and his insurer does not state a cause of action, and that questions asked upon interrogatories which have for their purpose the discovery of insurance information are not competent for the reason that they are not material to a suit for damages against that doctor.

See also State ex rel. Hersman v. District Court, (1963) 142 Mont. 139, 381 P.2d 799; Di Pietruntonio v. Superior Court, (1958) 84 Ariz. 291, 397 P.2d 746 and Verrastro v. Greeco (1958) 21 Conn.Sup. 165, 149 A.2d 703.

In the interest of efficiency in disposing of lawsuits, we must not disregard the right of litigants to privacy in the protection of their personal papers and contracts. We cannot ascribe to any view that would have for its practical result compensating the plaintiff in an action of this sort commensurate with the defendant's ability to pay, rather than according to the damages to the plaintiff. We hold with what we believe to be the majority view in both the federal and state decisions that the questions asked herein in the interrogatories propounded to the individual defendant Carman, concerning her policy of auto liability insurance, are not proper subjects for interrogation in this proceeding, nor should she be compelled to produce such policy for inspection and copying by the plaintiff as was ordered by the trial court.

Writ granted.

HALLEY, C. J., JACKSON, V. C. J., and DAVISON, WILLIAMS, BLACKBIRD, IRWIN and BERRY, JJ.

HODGES, J., concurs in part and dissents in part.

HODGES, Justice (dissenting in part).

I am of the opinion that the defendant should be required to answer the interrogatories relating to matters of automobile liability insurance coverage and should be required to produce such policy for inspection. As to the other issues and propositions set out in the majority opinion, I concur.

The majority opinion adopts the view that such discovery of automobile insurance coverage is not relevant to the issues in the case and was not within the contemplation of the discovery statute. I am unable to agree with this view and for the following reasons I dissent to this portion of the majority opinion.

Although a policy of automobile liability insurance may not be relevant to any triable issue formed by the pleadings in a case, it is vital and relevant to the subject matter and the judgment. It is difficult to ascribe

to the reasoning that a defendant's ability or inability to pay a judgment is not a matter of relevancy before trial. One of the primary considerations to an injured party is the ability or inability of the one who caused the injury to respond to payment of damages in the event a judgment is rendered against him. We must be aware of practicalities of litigation. The preparation, investigation, court deposits and labor expended are all matters of relevancy to an injured party. Should an injured party be subjected to a useless expenditure of effort and money to recover an uncollectible judgment because he is unable to discover, prior to trial, whether the defendant has liability insurance? I think not. In People ex rel. Terry v. Fisher, 12 Ill.2d 231, 145 N.E.2d 588, 593, the court said:

"Unlike other assets, a liability insurance policy exists for the single purpose of satisfying the liability that it covers. It has no other function and no other value. Litigation is a practical business. The litigant sues to recover money and is not interested in a paper judgment that cannot be collected. The presence or absence of liability insurance is frequently the controlling factor in determining the manner in which a case is prepared for trial. That there will be actual rather than nominal recovery conditions every aspect of preparation for the trial of these cases,—investigators, doctors, photographers and even the taking of depositions. * * *"

The automobile liability insurance policy is just as important and vital to an injured party, as it is to the insurer and insured. Suppose, the insured who negligently injured the plaintiff, also was negligent in not notifying his insurer of the pending action against him. Such neglect often results in relieving the insurance company from liability. 18 A.L.R.2d 443. Must the injured party again · be subjected to the tortfeasor's negligence? When a person has been injured through the negligence of another, he has such a special interest in the insurance contract that it is often said, the injured person is a third party benefi-

ciary. Ewing v. Colorado Farm Mut. Cas. Co., 133 Colo. 447, 296 P.2d 1040.

The enactment by our legislature of the Oklahoma Motor Vehicle Safety Responsibility Act, 47 O.S.1961, §§ 7–201 to 7–219, expresses the public interest and concern in automobile liability insurance contracts. In Maddox v. Grauman, Ky., 265 S.W.2d 939, 41 A.L.R.2d 964, the court in pointing out that the liability insurance policy is for the benefit of injured persons said:

"If the insurance question is relevant to the subject matter after the plaintiff prevails, why is it not relevant while the action pends? We believe it is. An insurance contract is no longer a secret, private, confidential arrangement between the insurance carrier and the individual but it is an agreement that embraces those whose person or property may be injured by the negligent act of the insured. We conclude the answers to the propounded questions are relevant to the subject matter of the litigation. * * *"

Title 12 O.S.1965 Supp., Sec. 548, provides that a party is entitled to the inspection and copying of any documents not privileged which:

"* * * constitute or contain evidence relating to any of the matters within the scope of examination permitted by deposition. * * *"

In State ex rel. Westerheide v. Shilling, 190 Okl. 305, 123 P.2d 674, we held:

"* * * The right to take the deposition is not limited by the restrictions on its use. The result is that each party may, after summons is served on the defendant, take the deposition of the opposite party without first establishing his motive in taking it, or agreeing to be bound by his testimony or to use it at the trial * * *."

The court further said:

"* * * The fact that relators may have had a threefold purpose in taking the deposition of Frame (to aid in further pleading, *to aid in preparing for*

*trial,* and to use at the trial if favorable) does not detract from his right to take the deposition." (Emphasis Supplied).

A part of the preparation for trial is the availing of one's self of all available and pertinent facts for a proper evaluation of the case. An injured party cannot adequately prepare for trial without a complete disclosure of all facts pertaining to the defendant's ability to pay a judgment. There cannot be an adequate and complete preparation for trial without a proper evaluation and apprisal of the case. And there can be no proper evaluation without information concerning the defendant's ability to pay a judgment. The knowledge and extent of an automobile liability insurance contract does immeasurably *aid the plaintiff in preparing for trial* as contemplated by the Shilling case, supra, and our discovery statute.

In my opinion, complete disclosure of insurance information would facilitate, not hinder, the settlement of lawsuits prior to trial on a fair and equitable basis. The vast majority of lawsuits which are disposed of by settlement before trial are those cases where both sides have diligently made investigation and preparation, and all secrets, mysteries and surprises have been eliminated between the litigants. If an injured party is to be adequately prepared for settlement discussions he must be apprised of the extent and ability of the defendant to satisfy a judgment. Such knowledge is vital to a proper and realistic evaluation of one's injuries for settlement purposes. We have come a long way through our discovery procedures and pre-trial methods in eliminating the traditional practice of "justice by ambush." The whole concept of modern discovery procedures and pre-trial methods is to eliminate guesswork, surprises and the "sporting theory of justice."

In my opinion the inspection and copying of an automobile liability insurance policy such as requested by the plaintiff herein is not only relevant but necessary in aiding him in his preparation for trial. The withholding of such insurance contracts can serve no useful purpose, while a complete disclosure of facts by both parties will promote a speedy disposition of cases and see that justice is done.